IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNY JAGGARS,               : Civ. No. 1:24-CV-1558
                            :
          Plaintiff      :
                            :
  v.                      :
                            : (Chief Magistrate Judge Bloom)
LELAND DUDEK, Acting    :
Commissioner of Social Security,[1] :
                            :
      Defendant     :

## MEMORANDUM OPINION

## I.    Introduction

Penny Jaggars filed a Title II application for a period of disability and disability insurance benefits on January 18, 2022. (Tr. 17). Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Jaggars was not disabled from her alleged onset date of disability of February 1, 2019, through March 31, 2020, her date last insured. (Tr. 10-11).

---

[1] Leland Dudek became the acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Jaggars now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

On January 18, 2022, Jaggars applied for disability insurance benefits, and later added an application for supplemental security income, citing a lack of cartilage in her right knee. (Tr. 240). Jaggars was 57 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a home health care worker. (Tr. 239, 241, 256).

With respect to her alleged impairment, the record revealed the following: The earliest relevant medical records are from April 21, 2018, when Jaggars went to Wayne Memorial Hospital after she tore her

meniscus in a fall. (Tr. 293). On June 6, 2018, Dr. David Caucci performed a right knee arthroscopy with partial medial meniscectomy, a removal of loose bodies, and a patellar chondroplasty. (*Id.*). Post-surgery, Dr. Caucci diagnosed Jaggars with a medial meniscal tear of right knee, a loose body medial compartment of the right knee, patellar chondromalacia graded three to four, and osteoarthrosis in the right knee. (*Id.*).

The medical record then jumps to June of 2021, when Jaggars consulted with Dr. John Mercuri. (Tr. 343). He noted that Jaggars had pain in her knee rated as high as eight out of ten, occasionally limped, and that the pain "has been worsening for some time [.]" (Tr. 343-46). Dr. Mercuri ordered and reviewed x-rays of Jaggars' knee before performing a corticosteroid injection in the knee. (Tr. 347). He repeated that injection in September. (Tr. 386). In December of 2021, Jaggars had a CT scan of her knee which showed, *inter alia*, osteoarthrosis. (Tr. 361). On April 22, 2022, Jaggars had additional surgery, a total knee arthroplasty of her right knee. (Tr. 585-602). She had a consultative internal medicine examination on November 10, 2023, where Dr. Gilbert

3

Jenouri listed Jaggars' chief complaint as lower back pain, but also noted she continued to have knee pain, ranging between six and ten out of ten. (Tr. 1347-62).

It is against this factual backdrop that the ALJ conducted a hearing in Jaggars' case on January 31, 2024. (Tr. 29). Jaggars and a vocational expert ("VE") both testified at this hearing. Jaggars testified about, *inter alia*, the nature of her knee injury, her work history, and the effect her knee injury had on her during the period between her alleged onset date and her date last insured. (Tr. 34-49). The VE first classified Jaggars' past work, then answered hypothetical questions from Jaggars' attorney about the employability of a claimant with Jaggars' background and specific types of limitations. (Tr. 49-52).

Following this hearing, on February 22, 2024, the ALJ issued a decision denying Jaggars' application for benefits. (Tr. 17-23). In that decision, the ALJ first concluded that Jaggars met the insured status requirement through March 31, 2020. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Jaggars suffered from the impairments of obesity and right knee disorder

4

status-post arthroscopy. (*Id.*). However, the ALJ also found that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment in the claimant" and because of that absence, neither impairment could be substantiated as severe during the period of alleged disability, meaning that Jaggars could not be found disabled. (Tr. 20). The ALJ did not continue the sequential evaluation from that point, instead moving on to discuss her consideration of Jaggars' reported symptoms, explaining that symptom evidence could not overcome the lack of medical evidence. (Tr. 22).

The ALJ also discussed the medical opinions on record. She found the opinions of the state agency medical consultants, Drs. Josie Henderson and Gerald Levandoski, to be somewhat persuasive. (Tr. 22). The ALJ adopted their opinions to the extent that they found the medical record insufficient to reach any conclusions, but rejected their determinations that Jaggars had certain severe medical impairments as unsupported by, and inconsistent with, the medical record evidence. (Tr. 22-23). The ALJ found the medical opinion of Dr. Gilbert Jenouri unpersuasive as that opinion was a contemporaneous assessment of

5

Jaggars' physical abilities on November 10, 2023, and had "little probative value in determining the ability of the claimant to function for the period of time between February 1, 2019, and March 31, 2020, . . . . Consequently . . . Dr. Jenouri's opinion is neither supported by, nor consistent with, the evidence of record during the period at issue." (Tr. 23). Having reached these conclusions, the ALJ determined that Jaggars had not met the demanding showing necessary to sustain this claim for benefits and denied the claim. (*Id.*).

This appeal followed. (Doc. 1). On appeal, Jaggars challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence. (Doc. 12 at 10). The appeal is now fully briefed and ripe for resolution. (Docs. 11, 14). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

III.  Discussion

A.  Substantial Evidence Review – the Role of this Court.

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-

6

maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime*

*Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the

correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear

and satisfactory explication of the basis on which it rests." *Cotter v.*
*Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive disability benefits under the Social Security Act, a
claimant must show that he or she is unable to "engage in any substantial
gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not less than
12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also*
20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a
severe physical or mental impairment that precludes [him/her] from
engaging in previous work or "any other substantial gainful work which
exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C.
§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits
under Title II of the Social Security Act, a claimant must show that he or
she is under retirement age, contributed to the insurance program, and
became disabled prior to the date on which he or she was last insured.
42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

10

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by

substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x

12

6, 11 (3d Cir. 2006).  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.  *Biller*, 962 F. Supp. 2d at 778–79.  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.  *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15.

Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Step 2 Analysis.

At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," 20 C.F.R. 404.1520(c), or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted). This Step 2 inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The claimant bears the burden to show that an impairment should be considered severe. *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

14

### D. <u>This Case Will Be Affirmed.</u>

As discussed above, to be eligible for disability benefits, Jaggars must show that she was insured for disability benefits when she became disabled. 42 USCA § 423(a)(1)(A). Jaggars alleges her disability began on February 1, 2019, and her date last insured was March 31, 2020. (Tr. 19-20). Therefore, Jaggars must show she was disabled during that 14-month period.

Only a severe medical impairment can support a disability claim, and a medical impairment is only severe if it impinges upon the claimant's ability to work. 42 U.S.C. § 423(d)(2)(A); *see also Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983). A severe medical impairment must be shown by objective medical evidence. *See* 42 U.S.C § 423(d)(3); 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The regulations further provide: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c).

15

In this case, the ALJ found that because there was no objective medical evidence from the relevant period in the record, Jaggars could not establish a severe impairment. (Tr. 20). Jaggars concedes there is no evidence from the relevant period but argues that the standard can be met by other methods, which we consider now and find to be unavailing.

First, Jaggars argues that there is medical evidence from 2021 showing she was suffering from knee pain, which, combined with the evidence of her 2018 knee surgery, suffices to show that she was disabled between those two dates. (Doc. 12 at 8-9). She argues that an ALJ may properly diagnose an impairment retrospectively using non-contemporaneous records, citing *Newell v. Commissioner of Social Security*, 347 F.3d 541, 547-48 (3d Cir. 2003). But in *Newell*, the Third Circuit Court of Appeals found that, because of the "slowly progressing" nature of claimant's impairments, retrospective consideration was merited to determine when those conditions became disabling. *Id.* at 547. Jaggars does not make a "progression" argument in this case—quite the opposite, she argues "there is no evidence of any intervening injury that worsened her knee." (Doc. 15 at 4). That argument exposes the inherent

problem created by the lack of evidence, as nothing shows the knee did *not* worsen after Jaggars' last date insured, and she bears the burden of proof here. Further, the ALJ considered this evidence in her decision. (Tr. 21). Jaggars asking this court to find that evidence necessitates a different outcome amounts to a request to re-weigh the evidence, which we are prohibited from doing. *Zirnsak*, 777 F.3d at 611. We conclude this argument is unavailing.

Jaggars argues in the alternative that, where the presence of a severe impairment is not clearly established, the ALJ is obligated to perform the full five step disability analysis. (Doc. 12 at 9-11). Jaggars argues that because some medical experts in this matter opined there was insufficient evidence to determine disability, the ALJ should have relied on those opinions and found Jaggars' disability "not clearly established." (*Id.*). But the ALJ is not obligated to accept any given conclusion opined by a medical expert, only to consider certain factors in the evaluation of those opinions and to explicitly reference supportability and consistency when discussing those evaluations. *See* 20 C.F.R. § 404.1520c(c). Here, the ALJ found the medical opinions in question were

"not supported by the evidence of record during the period at issue . . . .
[and are] internally inconsistent with their own conclusion that, before
the date last insured, the evidence of record was insufficient to evaluate
claimant's functioning." (Tr. 21-22). This is all that was required of the
ALJ, and so there is no error here. *See e.g.*, *Wolford v. Berryhill*, 2017
WL 6405865, at *7 (M.D. Pa. Dec. 15, 2017) (affirming an ALJ's decision
to deny a claim at Step 2 where "no records during the relevant time
period [were] consistent with the limitations later assessed[ ]" in the
medical opinion evidence).

In sum, the ALJ properly considered the medical opinion evidence,
and properly concluded that the non-contemporaneous evidence was
insufficient to show that Jaggars was disabled during the period in
question. We find no error with her decision. Accordingly, under the
deferential standard of review that applies to appeals of Social Security
disability determinations, we find that substantial evidence supported
the ALJ's evaluation of this case, and her decision will be affirmed.

18

IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 14, 2025